**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE** | **PETITIONER** |
| **THE COMPLAINT OF MARTY** | |
| **MCGRATH,** *as Owner and* | |
| *Operator of the Unnamed Fishing* | |
| *Vessel Hull ID #FGQ4K053G304* | |
| *for Exoneration from or Limitation* | |
| *of Liability* | |
| | |
| **v.** | **CIVIL ACTION NO. 1:25-cv-168-TBM-RPM** |
| | |
| **WILLIAM MIZE** | **CLAIMANT** |

**MEMORANDUM OPINION AND ORDER**

This admiralty case arises from a nighttime boat crash on Horn Island that injured William Mize. After Mize sued Marty McGrath, the boat's owner and captain, in state court, McGrath brought this limitation of liability action in federal court. Mize contemporaneously filed his claim and moved for offensive summary judgment. But Mize has failed to meet his initial summary judgment burden. The very limited state court discovery, which Mize provided, demonstrates genuine disputes about the boat's speed, McGrath's use of navigational equipment, and both parties' conduct before the crash. Also, discovery in federal court has not been scheduled, much less started. Mize's motion for summary judgment is denied.

## I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

McGrath owns a 34-foot Fountain center console boat with three 300 horsepower outboard motors. [1], p. 2. McGrath also holds a 100-ton Captain's License. [13], p. 2; [13-4], p. 1. One night, McGrath invited Mize, Justin Thomas, and Joey Befancon to join him on a boat ride. [13], p. 2; [13-4], p. 3. The group departed, with McGrath at the helm, from the harbor in Ocean Springs,

Mississippi. [13], p. 2; [13-3], p. 2. The group intended to cruise around Horn Island and potentially fish. [13-3], pps. 1–2. That was the plan, at least, until McGrath ran aground on Horn Island, completely beaching the boat. [13], p. 2; [13-3], p. 2.



[13], p. 3. As a result of the allision,[1] Mize claims he broke his foot and ankle, requiring surgery. *Id.* Mize further alleges that he faces another potential surgery, followed by physical therapy, and continues to suffer from chronic pain and mobility limitations. *Id.*

Mize sued McGrath in Mississippi state court for negligence. [13-1], pps. 1, 4–5. Generally, Mize's allegations related to McGrath's failure to use appropriate safety equipment, travel at a safe speed, maintain a proper lookout, and ensure his passengers were properly secured. *See id.* at p. 4. During the limited discovery in state court, Mize attempted to establish these allegations through requests for admissions and interrogatories. *See generally* [13-3]; [13-4]. But McGrath denied them, *see* [13-3], and blamed his boat's Lowrance GPS chart plotter for malfunctioning, [13-4], pps. 2–3. The parties did not engage in further discovery during the state court proceeding.

---

[1] "[I]n admiralty law, an *allision* is the violent encounter of a moving vessel and a stationary object . . . ." Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 14.1 (7th ed. 2025) (clarifying the difference between an allision and a collision).

Instead, after learning that Mize's claim exceeded the boat's value, McGrath filed a petition for exoneration from or limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.* [1]. The Court enjoined the state court proceedings and issued notice, establishing a monition period for claimants to come forward. *See* FED. R. CIV. P. SUPP. R. F. Mize was the only passenger to file an answer and claim. Alongside these filings, Mize moved for summary judgment on the same day. [13]. McGrath did not file a timely response, and Mize moved to grant summary judgment as unopposed or, in the alternative, deem his alleged facts admitted under Federal Rule of Civil Procedure 56(e). [19]. The next day, McGrath sought an extension of time under Federal Rule of Civil Procedure 56(d) to obtain affidavits necessary to oppose summary judgment. [23]. Before the Court ruled on his request, however, McGrath responded to Mize's motion for summary judgment. [27]. Mize then moved to strike McGrath's response. [28].

## II. DISCUSSION

Mize's motion for summary judgment fails on its own terms. Two exhibits contain limited discovery from the underlying state court case. These exhibits reveal McGrath's denials of facts that Mize characterizes as undisputed. Alternatively, Mize's motion is premature based on the unique facts, denials, and lack of any discovery in federal court.

### A. Summary Judgment Standard

Even when a party fails to respond to a dispositive motion, a court cannot automatically grant the motion without considering its substance. *Watson v. United States*, 285 F. App'x 140, 143 (5th Cir. 2008) (citing *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "fact is material if it

3

might affect the outcome of the suit under the governing law." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 (5th Cir. 2020) (citation omitted). And a "dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In demonstrating that a fact cannot be genuinely disputed, the movant must cite "to particular parts of materials in the record, including . . . affidavits, . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Lozano v. Collier*, 98 F.4th 614, 620 (5th Cir. 2024) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).

"All facts and inferences must be construed 'in the light most favorable to the nonmoving party.'" *Id.* (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). Moreover, because McGrath seeks a bench trial,[2] the Court "has somewhat greater discretion to consider what weight it will accord the evidence." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* at 321–22 (quoting *Johnson*, 597 F.3d at 676).

---

[2] Federal Rule of Civil Procedure 9(h) provides: "If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rule[] . . . 38(e)." Federal Rule of Civil Procedure 38(e) clarifies that there is no "right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)." "[T]he election made available to the pleader pursuant to Rule 9(h) is dispositive." *Hamm v. Island Operating Co.*, 450 F. App'x 365, 369 (5th Cir. 2011) (quoting *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 986 (5th Cir. 1978)). McGrath designated this matter as an admiralty and maritime claim under Rule 9(h). [1], p. 1.

**B. Application**

Courts apply a two-step analysis in deciding whether a shipowner is entitled to limit its liability. "First, the court determines what acts of negligence or conditions of unseaworthiness, if any, caused the accident." *Matter of Savage Inland Marine, LLC*, 539 F. Supp. 3d 629, 646 (E.D. Tex. 2021). The claimant seeking to dissolve the limitation action bears this initial burden. *Id.* "Second, if the claimant establishes negligence or unseaworthiness, the burden shifts to the vessel owner to prove that it had no knowledge or privity of these negligent acts or conditions of unseaworthiness." *Id.*; *accord* Thomas J. Schoenbaum, *Admiralty and Maritime Law*, §§ 15.2, .9 (7th ed. 2025) (covering two-step inquiry). Both steps are fact-intensive. *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 473 (5th Cir. 2022) (noting "the cause of the accident, the owner's privity or knowledge, and the crew's competence" are "fact-specific" inquiries).

Mize argues that his allegations, which are supported by six exhibits, satisfy both inquiries. But two of these exhibits—McGrath's responses to Mize's requests for admission and interrogatories during the state court discovery—reveal genuine factual disputes material to McGrath's alleged negligence. The Court will pinpoint a few.

There are disputed facts relevant to McGrath's operation of the boat. Mize alleges McGrath negligently piloted the boat "at a high rate of speed"[3] that night, without working radar or "any other equipment" to illuminate "obstacles hidden by the darkness," and failed to warn the passengers or take evasive action before impact. [13], pps. 2–3; [14], p. 6. McGrath denied these

---

[3] Mize alleges the boat was traveling around 50 miles per hour in his supporting memorandum's introduction. [14], p. 1. He does not, however, list this fact in his "Undisputed/Indisputable Material Fact" section or cite to a supporting exhibit in the introduction. Aside from Mize's federal answer, [21], p. 9, and his state complaint, [13-1], p. 2, the record lacks any evidence corroborating McGrath's approximate speed. And McGrath denied that he was traveling around 50 miles per hour during the state court discovery. [13-4], p. 4.

allegations during the state court discovery, including "traveling too fast for the conditions." [13-4], pps. 5–6, 8. It is true the boat's Furuno Model 1623 radar was "inoperable,"[4] but it was also equipped with a Lowrance LCX-111C chart plotter with GPS. [13-3], p. 7. McGrath used the Lowrance, as his state-court interrogatory response notes, to "chart a plot around the island." *Id.* at p. 4. McGrath also "maintained a visual lookout and asked others on the boat" to do so too. *Id.* These contested issues are material to whether McGrath acted reasonably. *See Limon v. Berryco Barge Lines, L.L.C.*, 787 F. Supp. 2d 580, 589–90 (S.D. Tex. 2011) (denying summary judgment where the record contained "conflicting evidence as to whether the radar was operating properly or whether Captain Turrentine was either untrained or improperly trained in its use"); *see also Matter of Graham Offshore Tugs LLC*, 749 F. Supp. 3d 758, 762 (E.D. Tex. 2024) ("Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact.").

Also, McGrath claimed that the Lowrance chart plotter malfunctioned. [13-3], pps. 2, 7. When asked to identify potential causes for Mize's alleged injuries, McGrath named the manufacturer of the GPS for providing inaccurate data. *Id.* at p. 3. Nothing in the record forecloses equipment error. A functioning chart plotter with GPS would presumably display an entire island. *See* [14], p. 6. McGrath also blamed Mize for failing to secure himself. [13-3], p. 3. Considering McGrath's claim, and because no other passenger came forward as injured, it is reasonable to infer—in the light most favorable to McGrath—that Mize's conduct before the crash may have

---

[4] Mize puts forward no law that deems a vessel without a radar as unseaworthy. Nor does he argue that any other characteristics rendered the boat unfit for use. Mize, instead, focuses only on McGrath's alleged negligence. The Court's opinion reflects this framing. *See In re Nassau Bay Water Sports, Inc.*, 62 F.3d 397, 1995 WL 449710, at *4 (5th Cir. 1995) (per curiam).

also contributed to his injuries.[5] These disputes also leave the record inept for summary judgment. *See Impala Terminals Burnside LLC*, 2021 WL 1123566, at *8–9 (denying summary judgment because there were "genuine issues for trial as to comparative fault and causation," specifically whether "the vessel's piloting errors were the *exclusive* cause of the allision").

For these reasons, Mize's own motion demonstrates factual disputes material to McGrath's alleged negligence at this preliminary stage. As a result, "the court cannot reach the second prong, privity and knowledge, at this time." *In re S. Coast Boat Rentals, Inc.*, No. CIV.A. 98-3452, 1999 WL 615180, at *5 (E.D. La. Aug. 12, 1999); *see also Matter of Lasala*, No. CV 18-11057, 2020 WL 6938808, at *3 (E.D. La. Nov. 25, 2020).

Alternatively, Mize's motion is premature based on the above analysis, the unique procedural history of this case, and the lack of any discovery in federal court. There is certainly nothing wrong with an early summary judgment motion. But Mize is seeking an offensive summary judgment on the issue of negligence in favor of the injured party without the benefit of much discovery. Mize's motion fails under its own weight to reach that destination. And "[i]f a party fails to properly support an assertion of fact," the Court may issue an "appropriate order." FED. R. CIV. P. 56(e). It is appropriate for courts to "deny motions for summary judgment as premature when discovery over relevant matters is incomplete." *Arc Controls, Inc. v. M/V NOR GOLIATH*,

---

[5] Mize argues the applicability of the Oregon Rule, *see* [14], p. 7, because it "creates a presumption of fault that shifts the burden of production and persuasion to a moving vessel who, under her own power, allides with a stationary object," *Impala Terminals Burnside LLC v. Marquette Transp. Co., LLC*, No. CV 19-12584, 2021 WL 1123566, at *5 (E.D. La. Mar. 24, 2021). But the Oregon Rule is "properly confined to the issue of breach only—not causation." *Id.* at 6 (quoting *Combo Mar., Inc.*, 615 F.3d 599, 605 (5th Cir. 2010)). Moreover, the Oregon Rule "only applies in the absence of evidence of fault." *In re Omega Protein, Inc.*, 548 F.3d 361, 368 (5th Cir. 2008); *see In re Int'l Marine, L.L.C.*, No. CIV.A. 12-358, 2013 WL 3293677, at *7–8 (E.D. La. June 28, 2013) (declining to apply the Oregon Rule). This is not a case where a vessel hit an object, the vessel sank, and there are no witnesses or evidence. Indeed, Mize argues there absolutely is evidence of fault. Similarly, this is not a *res ipsa loquitur* case for all of the reasons explained in this opinion. Mize has a strong case. But, in the light most favorable to McGrath, he may not be negligent based on his defenses.

No. 1:19-cv-391-LG-RHW, 2020 WL 1678237, at *1 (S.D. Miss. Apr. 6, 2020) (quoting *Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016)).[6]

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Claimant William Mize's [13] Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Claimant William Mize's [19] Motion to Grant Summary Judgment as Unopposed or, in the Alternative, to deem Claimant's Facts Admitted Under Rule 56(e) is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Petitioner Marty McGrath's [23] Motion for Extension of Time to File Response/Reply is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Claimant William Mize's [28] Motion to Strike is MOOT.

This, the 4th day of August, 2026.

                                       _____
                                       TAYLOR B. McNEEL
                                       UNITED STATES DISTRICT JUDGE

---

[6] To the extent McGrath attempts to strike Mize's affidavit, [27], p. 5–6, and move for cross summary judgment in his response, *id.* at p. 21, these requests are not properly before the Court. "A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." L. U. Civ. R. 7(b)(3)(C). Additionally, the Court is not inclined to determine these issues at this stage of the litigation.